## CROKER et al. v. CROKER et al.

(District Court, S. D. Florida. July 22, 1925.)
No. 341.

1. **Homestead ⊸64 — Extension of corporate limits, taking portion of homestead into city, held not to affect right of owner to add thereto.**

Extension of limits of incorporated city by Sp. Laws Fla. 1917, c. 7683, taking part of homestead into city limits, does not affect right of owner to add to homestead up to limit fixed therefor.

2. **Homestead ⊸70—Conveyance of pieces of land held not to destroy homestead character of land separated from main body by pieces conveyed.**

Conveyance of three separate pieces of land from homestead, thereby separating portions of homestead lands from other portions, did not destroy homestead character of parts separated from main body by pieces conveyed.

3. **Homestead ⊸161 — Head of family may abandon homestead, or any part thereof.**

Head of family may abandon homestead, or any part thereof.

4. **Homestead ⊸113—Conveyance by husband to wife through third person void.**

Conveyances by husband and wife to third person of husband's lands, constituting homestead, and conveyances by such third person to wife, or to husband and wife, were null and void as against husband's heirs.

5. **Homestead ⊸110—Deeds from owners of homestead held powers of attorney only, and land descended to heirs and widow.**

Where husband and wife contracted with third person that he should sell part of homestead and pay proceeds to wife, and incorporated in such contract an option in favor of such third person, and for convenience executed deeds to him, deeds did not pass fee simple, but were in nature of power of attorney, and, in absence of exercise of option in husband's lifetime, there was no alienation of homestead under Florida Constitution, and such lands, on death of husband, descended to widow and his heirs, though third person conveyed them to corporation, which took with notice.

6. **Courts ⊸366(19)—Construction of homestead provisions of Florida Constitution by Florida Supreme Court held binding on federal District Court.**

Construction of homestead provisions of Florida Constitution by Florida Supreme Court is binding on federal District Court in suit involving homestead rights in Florida land.

7. **Homestead ⊸167—Conduct of owner held not abandonment of homestead.**

Where landowner conveyed land to third person, who reconveyed it to owner and wife, and they subsequently authorized third person to sell land, and for convenience executed deeds to him, there was no abandonment of homestead.

In Equity. Suit by Howard Croker and others against Bula Croker and others. On

motions by defendant Bula Croker to dismiss and by defendants J. B. McDonald and another to strike certain portions of the bill. Motions denied.

George C. Bedell and John T. G. Crawford, both of Jacksonville, Fla., for complainants.

Treadwell & Treadwell, of Arcadia, Fla., for defendant Bula Croker.

Fleming, Hamilton, Diver & Fleming and C. H. Lickliter, all of Jacksonville, Fla. (C. D. Blackwell, of West Palm Beach, Fla., on the brief), for defendants McDonald and Palm Beach Estates.

CALL, District Judge. On October 24, 1910, by deed, Richard Croker was vested with fee-simple title to the south 550 feet of section 2 and all of section 11, in township 44 south, range 43 east. Shortly after acquiring said lands, Croker constructed a dwelling house on said land, and in November, 1914, he, with his wife, occupied and used the same as a home until the death of said Croker, and the widow is now occupying the same as her residence. On July 31, 1917, Croker acquired lots 1 and 2 of the subdivision of section 14, in township 44 south, range 43 east, contiguous to the first described land. Both parcels are less than 160 acres. The only part of said lands which is included within the corporate limits of any town is the 550 feet in section 2, and this was included within the corporate limits of the town of Palm Beach by act of the Legislature approved June 8, 1917. Sp. Laws Fla. 1917, c. 7683. Croker died in the month of April, 1922, leaving surviving him Bula Croker, his widow, Howard Croker, Ethel Croker White, Richard Croker, Jr., and Florence Croker Morris, his lawful children by his first marriage. Richard Croker left a last will and testament, in which Bula Croker was the sole and only devisee.

The bill alleges that the will is null and void as to the homestead, and both the properties acquired in 1910 and that acquired on July 31, 1917, constituted together the homestead of Richard Croker; that on November 7, 1917, the said Richard Croker, joined by his wife, executed a deed to one Eccleston, attempting to convey the 550 feet in section 2 and also section 11, and on the same day the said Eccleston executed a deed to the same lands to Bula Croker, without consideration; that on October 21, 1918, Richard Croker and his wife, Bula, executed a deed to one Eccleston to the lots 1 and 2 of the subdivision of section 14, acquired July 31, 1917; that said Eccleston executed a deed to the last-mentioned property to Richard and Bula Croker on October 22, 1918; that these conveyances were without consideration; that by three several deeds, based upon a valuable consideration, Richard Croker and his wife, on April 27, 1918, April 21, 1919, and March 22, 1920, conveyed the south 2,350 feet of the north 4,011 feet of section 11, leaving the legal title to 550 feet of section 2, and the north 1,661 feet and the south 1,321 feet of section 11 vested in Bula Croker, and leaving vested in Richard and Bula Croker by entirety lots 1 and 2 of subdivision of section 14; that about July 12, 1920, Richard and Bula Croker entered into a certain written contract with the defendant McDonald, by the terms of which he was authorized as agent to sell a part of the homestead upon certain terms and conditions; that said contract provided that all moneys received from the sale of said property should be paid to and belong to Bula Croker; that none of said proprety was ever sold under the provisions of said contract; that contemporaneously with the making of said contract, and for the convenience of its operation, the said Richard and Bula Croker executed two certain deeds, conveying the homestead property to said McDonald, but no sufficient consideration was paid by McDonald to support said deeds; that McDonald executed two deeds conveying said homestead property to defendant Palm Beach Estates, a corporation, which had due notice that McDonald was not the owner of said property; that incorporated in said written contract was an option giving said McDonald the right to purchase said homestead property; that, long after the death of Richard Croker, McDonald and the Palm Beach Estates undertook to exercise said option, by depositing into the registry of the court certain moneys and promissory notes unconditionally, payable to Bula Croker; that said Bula Croker had repudiated the contract and demanded the cancellation of the deeds; that therefore there was no change in the character of the homestead and no alienation thereof, and said homestead property descended to the widow and heirs of Richard Croker.

There follows the prayer that Richard Croker be decreed to have been the head of a family residing in the state of Florida at the time of his death and that the south 550 feet of section 2, the north 1,661 feet and the south 1,321.66 feet of section 11, and

lots 1 and 2 of the subdivision of section 14, be decreed to be the homestead of said Richard Croker; that the two deeds executed to Eccleston, and the deeds from Eccleston to Bula Croker and to Richard and Bula Croker, the contract between Richard and Bula Croker and McDonald, and the deeds to McDonald, the assignment of the contract to the Palm Beach Estates, and the deeds to the Palm Beach Estates, be all declared null and void as against the complainants; that the fee-simple title be declared to be in the complainants, subject to the dower right of Bula Croker.

At the hearing Florence Croker Morris applied to become co-complainant with the other complainants, which application was granted. Motions were made by Palm Beach Estates and J. B. McDonald to dismiss the bill and to strike certain portions of the bill. The defendant Bula Croker moved to dismiss the bill. The hearing was on these motions.

The allegations of the bill show that Richard Croker, the father of the complainants and the husband of the defendant Bula Croker, lived with his wife upon certain property in Palm Beach county as his home up to and until his death. It is also shown by the bill that in the year 1910 the said Croker became the owner in fee simple of the south 550 feet of section 2 and all of section 11 in township 44 south, range 43 east, and built thereon his dwelling; in June of 1917 the south 550 feet of section 2 was taken into the town of Palm Beach; in July, 1917, said Croker acquired lots 1 and 2 of the subdivision of section 14 in same township and range, these last two lots being contiguous to the other lands and constituting one body, containing less than 160 acres. Subsequent to the acquisition of the last-described property certain parts of the property were conveyed to purchasers, which in a measure broke up the contiguity of the body of land.

[1] It is contended for the defendants in their motions to dismiss that the last-acquired lots could not be added to the homestead after the taking of a portion of the homestead into the corporate limits of the town of Palm Beach. As I read the constitutional provisions, the taking in of the homestead or a portion thereof into the corporate limits of a municipality in no way affects the homesteader's rights as defined in that instrument. Prior to act of incorporation, Croker was entitled to 160 acres of land as a homestead, and, if his homestead consisted of a less number of acres, he could add to it from contiguous property up to that number of acres. It does not seem to me that by the extension of the corporate limits of a municipality, taking in a part of the homestead, this right would be affected, although the contiguous lands were acquired subsequent to such extension. I am of opinion, therefore, that the last-acquired land became a part of the Croker homestead.

[2-4] It is also contended by the defendants that the conveyance of the three several pieces of land from the homestead, thereby separating portions of the homestead lands from other portions, destroyed the homestead character of the parts separated from the main body by the pieces conveyed. I am of opinion that this contention is not tenable. Of course, the head of the family may abandon the homestead, or any part of it; but under the allegations of the bill, which are admitted by the three motions, such does not appear to be the fact. The bill seeks to have the deeds from Croker and wife to Eccleston and from Eccleston to Bula Croker and to Richard and Bula Croker declared null and void. Under the decision of the case of Norton v. Baya, 102 So. 361, in the Supreme Court of Florida, these conveyances are null and void as against the heirs.

[5] It was contended in argument that the two deeds from Croker and wife to McDonald must be read with the contract entered into between them. Read together, it is apparent to me that the deeds did not pass the fee-simple title to the lands, but more nearly approached powers of attorney to McDonald to make sales and execute deeds in the names of Richard and Bula to the lands so sold. The bill alleges that no sales were made prior to Richard Croker's death; that the only thing done was an assignment and deed to the Palm Beach Estates. Granting that these lands, or a part of them, comprised the homestead, and speaking only of the homestead lands, was such a contract and the deeds to McDonald an alienation under the Constitution of the state of Florida? The Supreme Court has construed the provisions in a number of cases; the last being Norton v. Baya, supra.

[6] The construction of that court is binding upon this court, and, giving that construction full weight, I cannot escape the conclusion that upon the death of Richard Croker the lands comprising the homestead of Richard Croker descended to his widow and heirs, and that the deeds to and con-

tracts with McDonald were not such an alienation as is contemplated by the Constitution, and did not vest the title in the same to McDonald. The Palm Beach Estates can stand in no better position than McDonald, the bill charging it with full knowledge of the facts.

In reaching my conclusions, I have considered the clause in the contract in regard to an option, but do not think this changes the conclusions reached. No option was exercised during Croker's lifetime, and according to the bill nothing done until after his death, and at his death the homestead real estate vested in his widow and heirs.

[7] It was also contended that the heirs are barred of their rights by laches. I am of opinion that this contention is not tenable. I have considered the question of abandonment of the homestead by the head of the family. Under the allegations of the bill there was no abandonment. I am constrained, therefore, to deny the motions to dismiss.

What I have said above disposes of the motions to strike certain portions of the bill, except those directed to the matters concerning Florence Croker Morris. The bill having been amended at the hearing as to her, that disposes of those.

The motions to strike certain portions of the bill will therefore be denied.