ESTATE OF IRVIN C. NELSON, DECEASED, FLORINE NELSON, ADMINISTRATRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46069. Filed April 19, 1955.

*Alfred P. Marshall, Esq.*, for the petitioner.
*Hugh G. Isley, Jr., Esq.*, for the respondent.

OPINION.

OPPER, *Judge:* Whether the widow acquired no more than a terminable interest at decedent's death in the 60 acres remaining in controversy, thus requiring the exclusion of its value from the marital deduction under section 812 (e) (1) (B), Internal Revenue Code of 1939,[1] must be determined from all the facts and circumstances [2] as they would be interpreted under Florida law. *Estate of Gust Marion Peterson,* 23 T. C. 1020; *Estate of Emmet Awtry,* 22 T. C. 91. There can be little doubt that the 5-acre oak grove section in which decedent's actual homesite was located at his death constituted homestead property under Florida law. *Baker* v. *State,* 17 Fla. 406. The Florida statute specifically provides that:

if the decedent is survived by a widow and lineal descendants, the widow shall take a life estate in the homestead, with vested remainder to the lineal descendants in being at the time of the death of the decedent.

That lineal descendants remained at decedent's death is not disputed. It follows that the widow received no more than a terminable interest

---

[1] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(e) BEQUEST, ETC., TO SURVIVING SPOUSE.—

(1) ALLOWANCE OF MARITAL DEDUCTION.—

\* \* \* \* \* \* \*

(B) Life Estate or Other Terminable Interest.—Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse ;

[2] E. g., *Gulf Refining Co.* v. *Ankeny,* 102 Fla. 151, 135 So. 521.

in the 5-acre tract at decedent's death.  See *Charles E. Bedford*, 5 T. C. 726.

While the result is more debatable we reach a similar conclusion as to the 55 acres of citrus groves remaining in dispute.  Thirty-five of these were acquired by decedent from his mother with the home-site as a single unit, and 20 were subsequently purchased but all were contiguous to the 5-acre homesite.  Homestead property has been defined broadly by Florida courts to include all rural land contiguous to the actual residence, regardless of its use, as long as the constitutional limitation of 160 acres is not exceeded.  "In McDougall et al. v. Meginniss et al., 21 Fla. 362, this [Florida] court held:

The Constitution of this State, Section 1, Article 9 [article 10], exempts a homestead to the extent of one hundred and sixty acres of land outside an incorporated city or town to the head of a family residing in this State, with the improvements on the real estate, without regard to the use that may be made of that portion of the tract not covered by the residence and enclosures.

\* \* \* \* \* \* \*

To say how the homesteader should use his land, whether as a "farm," or for a "saw-mill," or a "grist-mill," or a "carding and fulling mill," would be to impose a judicial condition not found in the Constitution of the State.  The Constitution does not prescribe the manner in which the tract shall be *used* beyond residing thereon.' "

*Fort* v. *Rigdon*, 100 Fla. 398, 129 So. 847.  "This language is clear, and it is significant that the framers of the Constitution of 1885, when they came to write the homestead and exemption clause for that Constitution, used the language of the Constitution of 1868 on the subject of the homestead's extent, which had been construed by a judge of the Supreme Court of the United States to mean that all improvements made by the homesteader in the course of his business or occupation were exempt, and by the Supreme Court of Florida, which had held that nothing more was required than for the homesteader to live on the tract to render the whole 160 acres exempt, and the Constitution did not prescribe the manner in which the land should be used beyond residing on it."  *Armour & Co.* v. *Hulvey*, 73 Fla. 294, 74 So. 212.

Decedent developed the 35 acres included in the original property as citrus groves.  His subsequent acquisition and improvement of the contiguous 20-acre tract was but an expansion of the original holding.  *Croker* v. *Croker*, (S. D., Fla.) 7 F. 2d 218.[3]  The private grove road, described in testimony as no more than a trail, which separated the 5 acres from the citrus area is insufficient to destroy the contiguity of the properties.  *Clark* v. *Cox*, 80 Fla. 63, 85 So. 173; *Shone* v. *Bellmore*, 75 Fla. 515, 78 So. 605.  Cases like *Milton* v. *Milton*, 63 Fla. 533, 58 So. 718, and *Brandies* v. *Perry*, 39 Fla. 172, 22 So. 268, where

[3] "Croker was entitled to 160 acres of land as a homestead, and, if his homestead consisted of a less number of acres, he could add to it from contiguous property up to that number of acres."

the properties were widely separated are of course inapplicable here. See *Shone* v. *Bellmore, supra.*

Moreover, in the absence of proof that decedent received consideration in money or money's worth for the transfer of real property deeded in his name to the partnership in 1944 or for the creation of a tenancy by the entireties therein in 1950, petitioner has failed to sustain its contention that decedent validly abandoned his homestead, in whole or in part, prior to his death. *Church* v. *Lee*, 102 Fla. 478, 136 So. 242; *Charles E. Bedford, supra.* See *Beall* v. *Pinkney*, (C. A. 5) 150 F. 2d 467.

And the fact that some (but not all) of decedent's surviving descendants subsequently conveyed by quitclaim deed whatever interest they may have acquired at his death in these 60 acres cannot alter the terminable nature of the widow's interest for estate tax purposes. Congress has provided specifically that disclaimers of interest by third parties which result in the receipt by the surviving spouse of an interest to which she would not otherwise be entitled shall not be recognized. Sec. 812 (e) (4) (B), I. R. C. 1939.[4] And see *Charles E. Bedford, supra.* Respondent's determination as to the 60 acres remaining in controversy is accordingly affirmed.

Because of certain concessions by respondent,

*Decision will be entered under Rule 50.*

---

[4] SEC. 812. NET ESTATE.
  (e) BEQUESTS, ETC., TO SURVIVING SPOUSE.—
    *   *   *   *   *   *   *
    (4) DISCLAIMERS.—
    *   *   *   *   *   *   *

    (B) Disclaimer by Any Other Person.—If under this subsection an interest would, in the absence of a disclaimer by any person other than the surviving spouse, be considered as passing from the decedent to such person, and if a disclaimer of such interest is made by such person and as a result of such disclaimer the surviving spouse is entitled to receive such interest, then such interest shall, for the purposes of this subsection, be considered as passing, not to the surviving spouse, but to the person who made the disclaimer, in the same manner as if the disclaimer had not been made.