ESTATE OF EMMET AWTRY, DECEASED, NELLIE AWTRY, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47073.    Filed April 23, 1954.

*Ned P. Gilbert, Esq.*, for the petitioner.
*Mark Townsend, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* Respondent determined a deficiency in estate tax of $3,825.27. Several adjustments have been agreed upon and can be reflected in a Rule 50 computation.

The issue for decision is whether a marital deduction may properly be claimed for the following items of property: (1) United States savings bonds held by decedent and his wife in coownership form, i. e., "Mr. or Mrs."; (2) a joint bank account; and (3) real estate held as joint tenants. The decedent furnished all the consideration for these properties.

All of the facts have been stipulated and the stipulation is adopted as our findings of fact.

The following recital will be helpful in understanding the issue.

On July 21, 1947, Emmet Awtry and Nellie Awtry, husband and wife, at Pella, Iowa, executed a joint and mutual last will and testament.

The joint will contained, among others, the following provisions:

ARTICLE ONE

It is the will of each of us and we do each so direct that all just debts, including funeral expenses and the cost of administration, be first paid from the general assets of our estates.

ARTICLE TWO

Whatever property we own, real or personal, we jointly own whether or not so recorded, and we have agreed and do hereby agree that the survivor of us shall have the full use and income and control of all our property as long as the survivor of us shall live.

ARTICLE THREE

After the death of the survivor of us all our property, real and personal, shall be sold by our trustees hereinafter named and the net proceeds shall be divided into two equal parts to be distributed amongst our nephews and nieces hereinafter named * * *

Emmet Awtry (hereinafter sometimes called decedent) died a resident of the State of Iowa on July 31, 1950, and was survived by his wife, Nellie Awtry.

Following decedent's death, the joint last will and testament was on August 23, 1950, duly admitted to probate in the District Court of Iowa in and for Marion County, and the widow, Nellie Awtry, duly

qualified as executrix and elected to take under the terms of the will.

On October 30, 1951, a timely Federal estate tax return was filed by Nellie Awtry, as executrix of the estate of Emmet Awtry, with the collector of internal revenue for the district of Iowa.

In the return, as filed, certain assets jointly owned by decedent and his wife, Nellie Awtry, were included in the gross estate only to the extent of one-half of their value. The Commissioner in his notice of deficiency determined that the full value of such assets should be included in the gross estate. This action is not contested. See sec. 811 (e), I. R. C.

Among those assets only the following are in issue in this proceeding:

(a) United States savings bonds and United States defense bonds, Series "E," in the total value of $39,948 and United States savings bonds, Series "G," in the total amount of $2,000. All of these bonds were registered jointly in the names of "Mrs. Nellie Awtry or Emmet Awtry" or "Mr. Emmet Awtry or Nellie Awtry."

(b) A checking account in the Pella National Bank, Pella, Iowa, in the total amount of $6,718.65 deposited with the bank pursuant to an agreement between the depositors and the bank that the amounts were deposited to the credit of and should pass to the survivor of either the decedent or Nellie Awtry.

(c) Real estate of the value of $10,000 acquired by warranty deed on February 28, 1944, by which warranty deed real estate was conveyed to decedent and Nellie Awtry, as joint tenants, and not as tenants in common.

There is no action of any nature now pending in any court nor so far as is now known is there any action intended in which any of the beneficiaries named in decedent's last will and testament contend that the widow, Nellie Awtry, does not have the right and power to spend, consume, or dissipate any of the assets in the estate.

The statutory provisions involved are set forth in the margin.[1]

---

[1] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \*

(e) BEQUESTS, ETC., TO SURVIVING SPOUSE.—

(1) ALLOWANCE OF MARITAL DEDUCTION.—

(A) In general.—An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(B) LIFE ESTATE OR OTHER TERMINABLE INTEREST.—Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

(ii) if by reason of such passing such person (or his heirs or assigns) may

Respondent's contention is that no marital deduction is allowable for the assets in question because by virtue of the joint will, the interest in the assets which passed to decedent's wife was a terminable interest and that an interest in such assets also passed to persons other than the surviving spouse (the nephews and nieces), which persons may possess or enjoy the assets after termination of the surviving spouse's interest. In other words, what passed to the surviving spouse was equivalent to a life estate, with remainder to the nephews and nieces. Accordingly, no marital deduction is allowable under section 812 (e) (1) (B).

Apparently both parties agree that the full value of the assets in question is includible in the gross estate of decedent. At any rate, the respondent so determined in the deficiency notice and petitioner does not contest that determination. The parties are also in apparent agreement that these assets "passed" from decedent to his surviving spouse within the meaning of sections 812 (e) (1) (A) and (e) (3) (E) quoted in the margin.

The crux of the controversy is the applicability of section 812 (e) (1) (B). This section provides in effect that no marital deduction shall be allowed where the interest passing to the surviving spouse (for less than an adequate or full consideration, which is the case here) will terminate or fail upon the lapse of time or the occurrence of an event, if an interest in the property also passes from decedent to any person other than the surviving spouse and by reason of such passing such other person may possess or enjoy any part of the property after the termination of the interest passing to the surviving spouse. Put another way, no deduction is allowable if the surviving spouse here took a life estate in the specified assets with remainder to the nephews and nieces. Respondent contends that is precisely the case before us.

On the other hand, petitioner's argument is that the specified assets were held by decedent and his surviving spouse in joint or coownership form and that the interest passing to the surviving spouse passed by virtue of the very nature of that ownership and not by virtue of the joint and mutual will. As summarized on brief, petitioner contends

possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse ;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(3) DEFINITION.—For the purposes of this subsection an interest in property shall be considered as passing from the decedent to any person if and only if—

(A) such interest is bequeathed or devised to such person by the decedent ; or

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(D) such interest has been transferred to such person by the decedent at any time ; or

(E) such interest was, at the time of the decedent's death, held by such person and the decedent \* \* \* in joint ownership with right of survivorship \* \* \*

that the contract with the government as to the government bonds, the contract with the depository bank, and the contract relating to the ownership of the home of the decedent and the surviving wife are unaffected by the Last Will and Testament of the decedent.

From this argument it would follow that the surviving spouse took what amounted to a fee in the assets and that the estate should be allowed a deduction for their full value.

Petitioner's position might be sustained if it were not for the joint and mutual will. However, we do not see how we can ignore the will and fail to consider the effect given to such an instrument by the Iowa courts. *Helvering* v. *Stuart*, 317 U. S. 154.

Decedent and his wife both executed the will. It was designated as a "joint and mutual" will. It purported to dispose of "whatever property we own, real or personal" and also provided that such property "we jointly own whether or not so recorded." Further, the will provided that the survivor should have "the full use and income and control of all our property" as long as the survivor "shall live," and after the survivor's death "all our property, real and personal, shall be sold by our trustees * * *" and the proceeds divided among named nephews and nieces. This language is sweeping and we think it includes the assets here in question. We also think the terms of the will establish the agreement of the parties to dispose of all their property in a particular manner, each in consideration of the other. The surviving spouse elected to take under the will and its terms are binding upon her. *In re Farley's Estate*, 237 Iowa 1069, 24 N. W. 2d 453.

The Iowa courts clearly recognize and give effect to such wills. In *In re Johnson's Estate*, 233 Iowa 782, 10 N. W. 2d 664, 666, the Supreme Court of Iowa defined joint and mutual wills as follows:

A joint will is a single testamentary instrument which contains the wills of two or more persons and is executed jointly by them. Mutual wills are those in which two or more testators make reciprocal provisions for each other. Mutual wills are also defined as those which are executed pursuant to an agreement between two or more persons to dispose of their property in a particular manner, each 'in consideration of the other. Mutual wills may be in one instrument or more than one; thus, a joint will may also be mutual. * * * Where a joint will devises the entire estate, or a life estate, to the survivor, with the remainder to third persons, such will is ordinarily entitled to be probated upon the death of each of the testators.

And it was said in *Anderson* v. *Anderson*, 181 Iowa 578, 164 N. W. 1042,

In a joint or mutual will for the benefit of the survivor, there is an element which partakes of the nature of contractual obligation. * * * if there be no revocation before the death of one of the parties, the right of the survivor is thereby fixed and determined according to the terms of the mutual will.

Furthermore, in *Child* v. *Smith*, 225 Iowa 1205, 282 N. W. 316, the Iowa Supreme Court after quoting the above, went on to say, "And where * * * provision is made for third parties, the rights of such third parties are equally thereby fixed and determined according to the terms of the mutual will." The provisions of the will are plain and unambiguous. We have set them out heretofore and under the principles stated in the above cases and other Iowa decisions cited therein, we are of the opinion that the will devised *all* the property owned by the decedent and his wife, including the assets in question, to the survivor for life with remainder to the named nieces and nephews. See *Blanks* v. *Jiggetts*, 192 Va. 337, 64 S. E. 2d 809.

This is true despite the argument of petitioner that such a result is contrary to United States Treasury Department Savings Bonds Regulations which provide that when United States savings bonds are registered in coownership form, as here, "the surviving co-owner will be recognized as the sole and absolute owner of the bond and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor * * *." Petitioner refers to these provisions of the Savings Bonds Regulations and also to other provisions of the regulations declaring such bonds to be nontransferable and prohibiting inter vivos transfers, and argues that the regulations fix property rights in the registered owners which cannot be changed, even by agreement. That these regulations are not so broad as petitioner contends has been held by various courts. *Succession of Geagan*, 212 La. 574, 33 So. 2d 118; *Olsen* v. *Olsen*, 189 Misc. 1046, 70 N. Y. S. 2d 838; *Union National Bank* v. *Jessell*, 358 Mo. 467, 215 S. W. 2d 474; *Chase* v. *Leiter*, 96 Cal. App. 2d 439, 215 P. 2d 756.

Some of these cases involve joint and mutual wills. For instance, in *Union National Bank* v. *Jessell, supra*, a husband and wife executed a joint and mutual will. Among other things the will gave the survivor his or her property for life and required the survivor to devise all the rest of his or her property owned or thereafter acquired, jointly or severally, to a trust. The wife predeceased her husband. On the husband's death certain United States savings bonds were found which he had purchased with his personal funds and with funds coming from his wife's estate. These bonds were registered in his name, payable on death to a son. The question presented was whether the bonds belonged to the son or the trust. The Supreme Court of Missouri held that the bonds belonged to the trust, notwithstanding the form of their registration and the Treasury Department Savings Bonds Regulations, and decreed that the named payee cash the bonds and turn the proceeds over to the trust.

And in *Chase* v. *Leiter, supra*, where it was contended that because of the Treasury Department Savings Bonds Regulations, savings bonds registered in the names of a husband and wife as coowners or

in the name of the husband payable on death to the wife, could not be transmuted into community property by the joint and mutual will of the husband and wife, the District Court of Appeal, First District, California, decided to the contrary. The court said

If the parties voluntarily enter into an agreement concerning interests in the bonds, which agreement is approved in a divorce decree, the government will recognize such an agreement. It is logical that if the parties voluntarily agree to a particular treatment of bonds and such agreement is approved in this action, the government could and would have no objection. The principal thing that the government wants to prevent is A giving away B's rights without B agreeing to it.

We see no necessary inconsistency between the Treasury Department Savings Bonds Regulations and our holding here.

In line with the Iowa decisions referred to above, we think the Iowa courts would find a way to give effect to the terms of the joint will of decedent and his wife and would see to it that the remainder interest of the nephews and nieces was protected (should that become necessary) and that this result would be reached even though part of the assets consisted of United States savings bonds.

What we have said with respect to the United States savings bonds applies with equal or more force to the joint bank account and the jointly held real estate. These assets belonged to decedent and his wife jointly, they agreed in their joint and mutual will as to how the assets were to be treated and disposed of and we know of no reason why that agreement should not be given effect. *Baker* v. *Syfritt*, 147 Iowa 49, 125 N. W. 998.

We hold that the interest passing to the surviving spouse in the United States savings bonds, the joint bank account, and the jointly held real property was a terminable interest within the meaning of section 812 (e) (1) (B) of the Internal Revenue Code. Accordingly, no marital deduction therefor is allowable.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

FISHER, *J.*, concurs in the result.

———

ARUNDELL, *J.*, dissenting: It is a fundamental principle of law that property held in joint tenancy passes to the surviving tenant by operation of law. Property thus held is not capable of testamentary devise or disposition. As stated by Judge Phillips of the Tenth Circuit in *Hernandez* v. *Becker*, 54 F. 2d 542, 547, "The chief incident of such an estate is the right of survivorship * * *. The survivor does not take the moiety of the other tenant from him or as his successor, but takes it under and by virtue of the conveyance or instrument by which the joint tenancy was created." In 14 Am. Jur., section 6, page 80, the rule is stated as follows: "A consequence of the

doctrine of survivorship is that a joint tenant cannot devise his interest in the land, for the devise does not take effect until after the devisor's death, and the claim of the surviving tenant arises in the same instant with that of the devisee and is preferred thereto."[1] Thus, a will which purports to devise property held by the testator and another in joint tenancy with the right of survivorship is nugatory, at least insofar as it deals with the property jointly held.

In this case, we have one additional fact. The testators here composed a joint will, or mutual will, devising one to the other, property held in joint tenancy for life with power to consume, and with remainder over to designated remaindermen. The majority concludes that this will was effective to pass only a life estate in the joint property to the survivor, and a life estate being a terminable interest within the meaning of section 812 (e), the property thus received by the survivor does not qualify for the marital deduction. What is unexplained in the majority's opinion is how the mere signing of a mutual will operates to reduce an estate in fee simple in the surviving joint tenant to a life estate.

It is our understanding that a mutual will speaks as of the time of death the same as in the case of all wills. The dispositions made by such an instrument are testamentary in character and do not purport to make an inter vivos transfer. The law seems to be clear that at any time prior to the death of either of the joint makers of the will either can at any time revoke the will, and there is respectable authority that such a joint will may be revoked by the survivor, particularly if to do so would not constitute a fraud on the deceased party.

If the testators here had not signed a mutual will, the precedents are clear that the property held in joint tenancy would have passed to the surviving spouse by operation of law. And, such interest would have qualified for the marital deduction privilege under the clear wording of section 812 (e) and the legislative intent of that section. Moreover, it is also clear that, had the first-dying spouse attempted to devise the jointly held property to his spouse, the property would still have passed to the survivor by operation of law—the will being ineffective to devise this property. And, in this situation, it would appear that the marital deduction would apply to the property passing to the survivor. How, then, does the fact that the parties

---

[1] To the same effect is a quotation from Sir William Blackstone as found in 1 Cooley's Blackstone (4th Ed.), bk. II, ch. 12, sec. 185: "But a devise of one's share by will is no severance of the jointure: for no testament takes effect till after the death of the testator, and by such death the right of the survivor (which accrued at the original creation of the estate, and has therefore a priority to the other) is already vested." The same rule is announced by the modern authorities as found in 48 C. J. S., Joint Tenancy, sec. 4.

signed a mutual will purportedly devising to each other the property which would have passed by survivorship change the survivor's estate when neither one singly could have accomplished any change by devise on the legal estate of the other?

I do not believe that the principles which give effectiveness to a joint will go as far as to allow a joint will to accomplish something in working a change of estate which separate wills of the two testators could not accomplish. While the joint will with which we are dealing may well serve to devise property of the testators held in severalty, it is not believed that it can control the devolution of property held jointly with right of survivorship. Such property passes to the surviving spouse by purchase and not by devise and her estate in that property is unlimited and should qualify for the marital deduction privilege. The fact that there may be a contractual obligation that must be respected by the survivor does not change the fact that at the moment of death the survivor took the jointly held property in full ownership.

Congress sought in the Revenue Act of 1948 to equalize the treatment accorded residents of community property States and non-community property States and to that end there was provided the so-called marital deduction with which we are here dealing. Deductions are determined by Congress and if, as I believe, the joint property in question came to petitioner by operation of law, the full test of the statute is met. It seems to me that the holding of the majority serves to defeat the purpose Congress had in mind.

BRUCE, *J.*, agrees with this dissent.

———

WITHEY, *J.*, dissenting: I respectfully dissent from the prevailing opinion in this case for the reason that I do not believe that the opinion gives proper effect to the mutual will of petitioner and her deceased husband. The mutual will did not act to vest title to the real or personal property of the testators in anyone, nor did said will, in my view, vest any interest in such property in the devisees named therein. Such devisees' rights under the will related only to the disposition of the property by petitioner at her death. The opinion of the majority is unconvincing that during her lifetime she did not possess full and complete title to all of such property even to the extent of disposing of the same in its entirety. Under such a situation I cannot agree that petitioner's interest in the property here at issue was terminable or that the devisees named in the will possessed any interest therein within the meaning of section 812, Internal Revenue Code.